**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **3-CR-17-343** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **ROBERTO TORNER,** | : | |
| **LIZA ROBLES, and** | | |
| **DAVID ALZUGARAY-LUGONES** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court are the pre-trial motions for a severance of offenses and for a severance from his co-defendants, David Alzugaray-Lugones and Liza Robles, under Fed.R.Crim.P. 8 and 14, (Doc. 112), filed, through counsel, by defendant Roberto Torner.[1] Torner also moves to bifurcate or for a severance of Counts 3, 4, 5 and 8 based on the felon in possession of a firearm element in those counts. Further, Torner filed a motion in limine to preclude the government from introducing certain evidence of alleged prior bad acts in which he may have been involved.

Also before the court are the pre-trial motions for a severance of counts, (Doc. 114), and for a severance from the co-defendants under Fed.R.Crim.P. 8 and 14, (Doc. 116), filed, through counsel, by defendant Liza Robles. Robles moves to have the two drug charges filed against her severed from

---

[1]Torner filed his multiple pre-trial motions in one document. In the future, counsel is advised that each motion should be filed in a separate document along with a separate brief in support.

the two firearms charges against her alleging that the charges bear no connection. Robles also seeks the court to conduct a separate trial for her from her two co-defendants, David Alzugaray-Lugones and Roberto Torner. Robles states that since one of the counts charged against her in the Indictment is that she conspired with co-defendants to distribute heroin, in violation of 21 U.S.C. §846, she will be prejudiced if her trial is not severed from her co-defendants because the jury will have difficulty separating her alleged acts from the alleged acts of her co-defendants. Robles also joined in Torner's motion in limine. For the reasons set forth below, the court will **DENY** Torner's and Robles' motions for severance of offenses and motions for a severance of the trial. The court will also **DENY** Torner's motion to bifurcate or for a severance of Counts 3, 4, 5 and 8. Further, the court will **GRANT IN PART** and **DENY IN PART** Torner's and Robles' motions in limine to preclude the introduction of certain evidence at trial.

## I.  BACKGROUND

### A. Torner

By way of relevant background, on November 7, 2017, Torner was indicted with the two stated co-defendants and charged by a grand jury in an Indictment. (Doc. 18). On January 30, 2018, Torner was charged in a First Superseding Indictment ("FSI") with the following offenses: Count 1, conspiracy to distribute and possession with intent to distribute heroin, in violation of 21 U.S.C. §846; Count 2, distribution and possession with intent

to distribute heroin, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C); Count 3, firearms conspiracy to commit the offense of felon in possession of a firearm, in violation of 21 U.S.C. §371; Count 5, felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §922(g)(1); Count 7, possession of stolen explosives, in violation of 18 U.S.C. §842(h) and §3147(1); and Count 8, possession of explosives by a felon, in violation of 18 U.S.C. §842(j) and §3147(1). (Doc. 61).

On February 6, 2018, Torner was arraigned and pled not guilty to all of the charges against him in the FSI. (Doc. 68).

On June 14, 2018, Torner filed his multiple pre-trial motions. (Doc. 112). Torner simultaneously filed his brief in support of his motions. (Doc. 113).

### B. Robles

On November 7, 2017, Robles was indicted with the two stated co-defendants and charged by a grand jury in an Indictment. (Doc. 18). Robles was charged with conspiracy to distribute and possession with intent to distribute heroin, in violation of 21 U.S.C. §846, distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §841(a)(1), conspiracy to commit the offense of felon in possession of a firearm, in violation of 21 U.S.C. §371, and transfer of firearms and ammunition to a prohibited person, namely, Torner, Robles' "fiancé" and father of her four children, in violation of 21 U.S.C. §922(d)(1).

On January 30, 2018, Robles was charged with the stated four offenses in the FSI. (Doc. 61).

On February 6, 2018, Robles was arraigned and pled not guilty to all of the charges against her in the FSI. (Doc. 68).

On June 14, 2018, Robles filed four pre-trial motions, including her instant motions for a severance of counts, (Doc. 114), and for a severance from the co-defendants, (Doc. 116). Robles simultaneously filed her briefs in support of her motions. (Docs. 115 & 117).

After being granted an extension of time, the government filed its brief in opposition to Torner's and Robles' motions on July 6, 2018. (Docs. 145). Robles filed her reply brief on July 20, 2018. (Doc.154).

The trial in this case is scheduled to commence for all three defendants on September 10, 2018.

The court will now address Torner's and Robles' motions seriatim.[2]

## II. LEGAL STANDARD

The purposes of Rules 8(b) and 14 are "to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." Bruton v. United States, 391 U.S. 123, 131 n. 6, 88 S.Ct. 1620 (1968). Federal Rule of Criminal Procedure 8 addresses the joinder of offenses and defendants and provides:

---

[2]Also pending before the court is the motion to suppress evidence and statements filed by Torner, (Doc. 112), which was joined by Robles, (Doc. 120). The court will address these motions in a separate Memorandum.

(a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged-whether felonies or misdemeanors or both-are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

(b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

The court in U.S. v. Adens, 2015 WL 894205, *1 (E.D.Pa. Feb. 27, 2015), explained Rule 8 as follows:

When multiple defendants are charged in a single case, as here, Rule 8(b) governs both the proper joinder of defendants and the proper joinder of offenses. *See* United States v. Irizarry, 341 F.3d 273, 287 (3d Cir. 2003). Rule 8(b) does not expressly allow the joinder in a single indictment of acts that are "of the same or similar character" as does Rule 8(a), *see id.* at 287 n. 4, but Rule 8(b)'s terms are broadly construed so that a "transactional nexus," *see id.* at 241, or a logical relationship between charges, is all that is required for them to be considered part of the same "transaction." *See* United States v. Hills, No. 08–654–1, 2009 WL 2461735 (E.D.Pa. Aug.10, 2009). To determine whether there is a logical relationship between charges, trial judges may look at pre-trial documents, including but not limited to the indictment. *See* United States v. McGill, 964 F.2d 222, 242 (3d Cir.1992).

Thus, there is not a misjoinder under Rule 8 if "the temporal proximity of and substantive similarities between the [two sets of charges] render them sufficiently related as to have the 'transactional nexus' required for joinder." Adens, 2015 WL 894205, *3; *see also* United States v. Jones, 2016 WL 3067010, *26 (W.D.Pa. June 1, 2017) ("Rule 8 authorizes joinder of charges if they are of a similar character, are based on the same act or transaction,

5

or are part of a common scheme.").

However, [i]f joinder is improper under Rule 8, the Court must order separate trials." Adens, 2015 WL 894205, at *2 (citing United States v. Walker, 657 F.3d 160, 170 (3d Cir. 2011) ("Rule 8 requires severance where defendants were improperly joined."). Even if defendants are properly joined under Rule 8 , "the Court may sever defendants or offenses under Rule 14 '[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together.'" Id. (citing Fed.R.Crim.P. 14). Further, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. (quoting Zafiro v. United States, 506 U.S. 534, 539, 113 S.Ct. 933 (1993)).

There is a "heavy" burden on the defendant to show "clear and substantial prejudice resulting in a manifestly unfair trial." Id. (quoting United States v. Eufrasio, 935 F.2d 553, 568 (3d Cir. 1991)). Additionally, "[e]ven when the risk of prejudice is high, less drastic measures than severance (such as limiting instructions) 'often will suffice to cure any risk of prejudice.'" Id. (quoting Zafiro, 506 U.S. at 539). As such, "the appropriate question for the Court on a motion under Rule 14 is whether the jury can 'reasonably be expected to compartmentalize the evidence as it relates to the separate defendants in view of its volume and limited admissibility.'" Id. (quoting United States v. Serubo, 460 F.Supp. 689, 694 (E.D.Pa. 1978)); *see also* Jones,

6

2016 WL 3067010, *26 ("Rule 14 provides the court discretion to order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires, if joinder of offenses appears to prejudice either the defendant or the government.") (citations omitted).

The motions in limine are mainly filed pursuant to Fed.R.Evid. 404(b) and 609(a)(1)(B). The motion also seeks, in part, to exclude evidence as irrelevant. It is axiomatic that "irrelevant evidence is not admissible." Fed.R.Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed.R.Evid. 401. Even if evidence is relevant, the court can exclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

Federal Rule of Evidence 404(b) precludes the admission of other crimes, wrongs, or acts "to prove the character of a person in order to show conformity therewith". However, under Rule 404(b), such evidence is admissible for legitimate evidentiary purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake."

Federal Rule of Evidence 609 pertains to the use of prior convictions for impeachment purposes and provides:

The following rules apply to attacking a witness's character for

7

truthfulness by evidence of a criminal conviction:
(1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
(B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant[.]

Fed.R.Evid. 609(a)(1)(B).

## III.    DISCUSSION

### *1. Motion for Severance of Offenses*

### *A. Torner*

Torner states that the FSI charges him with three separate sets of offenses, namely, drug offenses, firearm offenses and explosives offenses. He contends that joinder of these three categories offenses in the FSI is improper under Rule 8 because the offenses are not of the same of similar character, are not based on the same act or transaction, and are not connected with or constitute parts of a common scheme or plan. Specifically, Torner argues that the drug offenses allege a six day conspiracy and one delivery of heroin all of which transpired in June 2015. He states that the firearms offenses all stem from Robles' alleged unlawful purchase and transfer of firearms to him and that these firearms offenses have nothing to do with the drug offenses charged against him. Further, Torner contends that the explosives offenses are completely unrelated to either the drug offenses and firearms offenses. Thus, Torner claims that the three different categories of offenses charged against him are not connected "temporally or logically to

support a conclusion that the crimes were part of the same transaction or plan."

As such, Torner requests the court to conduct three separate trials regarding his charges, namely, one on the drug charges (Counts 1 and 2), one on the firearms charges (Counts 3 and 5), and one on the explosives charges (Counts 7 and 8).

### B. Robles

Robles seeks to sever the two counts (Counts 1 and 2) charging her with drug offenses from the two counts (Counts 3 and 4) charging her with firearm offenses. Robles states that the FSI "covers two separate and distinct sets of facts", namely, Count 1 charges her with conspiring to distribute heroin with the two co-defendants from June 2, 2015 through June 8, 2015, and Count 2 charges her with aiding and abetting the distribution and possession with intent to distribute heroin on or about June 8, 2015. Robles states that in Count 3, she is charged with "a completely separate set of events" from the drug charges, namely, conspiring with Torner to commit the offense of felon in possession of firearms from May 12, 2012 through August 28, 2017. In Count 4, Robles is charged with transferring firearms and ammunition to a convicted felon and a prohibited person (i.e., Torner) from August 23, 2014 through August 28, 2017.

As such, Robles seeks separate trials regarding her drug charges (Counts 1 and 2) from her firearms charges (Counts 3 and 4). Robles contends that Counts 1 and 2 have been improperly joined with Counts 3 and

4 for trial since "they are separate and distinct events and not part of the same course of conduct or pattern of behavior." She states that a single trial which includes both events, i.e., the drug offenses and the firearm offenses, will prejudice her. Robles argues that the two sets of charges involve unrelated events and that the "drug and firearms charges are not based on the same act or transaction nor are they part of a common scheme or plan."

Robles argues that none of the factors permitting joinder under Rule 8(a) are present in her case. She points out that the allegations in Counts 1 and 2 relate to drugs and the allegations in Counts 3 and 4 relate to firearms showing that they are not of the same character. Since there is no connection between the drug charges and the firearms charges, she contends that there has been misjoinder of the two sets of counts, one pertaining to drugs and the other pertaining to firearms, under Rule 8.

Robles also argues that she will be prejudiced if the two sets of counts are not severed pursuant to Rule 14. She states that "it is critical that the allegations in Counts 1 and 2 occurred in the midst of the temporally larger allegations contained in Counts 3 and 4." She contends that this will prejudice her since the jury "could easily be confused and infer a relationship between the drug charges and the firearms offenses." Robles also states that the jury will likely be hostile to her since the two distinct set of charges joined together in one trial will depict her as a "delinquent." She argues that even if the court gave the jury limiting instructions, they would not alleviate the prejudice to her since the jury will not be able to compartmentalize the two sets of charges

which overlap in time. Additionally, Robles states that she will be prejudiced since the "jury would be swayed by the fact that she allegedly was involved in the distribution of heroin, and at another, unrelated time and place, she allegedly conspired to commit the offense of felon in possession of firearms as well as to transfer firearms and ammunition to a convicted felon."

Thus, Robles states that the two separate and distinct set of charges in Counts 1 and 2 should be severed for trial from the charges in Counts 3 and 4, and that she should be granted separate trials, one for Counts 1 and 2, and one for Counts 3 and 4.

In response to Torner's and Robles' motions for a severance of charges, the government states that while these defendants claim the categories of offenses are unrelated to one another, both the plain language of the FSI and its evidence will show the nexus between all of the offenses. Thus, the government states that "a single trial on all charges will permit the jury to hear the entire scheme and plan perpetuated by the defendants, and promote the interests of judicial efficiency."

As indicated, since multiple defendants are charged in the present case, the stricter standard of Rule 8(b), rather than the more permissive standard of Rule 8(a), governs Torner's and Robles' challenges to both the joinder of counts and defendants. *See* Irizarry, 341 F.3d at 287; *see also* U.S. v. Green, 563 Fed.Appx. 913, 916 (3d Cir. 2014) ("In multi-defendant cases, we have held 'the tests for joinder of counts and defendants is merged in Rule 8(b)) (citation omitted). In Green, the Third Circuit stated, "[t]o satisfy Rule 8(b), "[i]t

is not enough that defendants are involved in offenses of the same or similar character; there must exist a transactional nexus in that the defendants must have participated in 'the same act or transaction, or in the same series of acts or transactions.'" (quoting United States v. Jimenez, 513 F.3d 62, 82-83 (3d Cir. 2008)). When determining the propriety of joinder of offenses, the court can consider the face of the indictment, Irizarry, 341 F.3d at 287, as well as pretrial documents that show the factual connections between the counts and "any offers of proof submitted by the government." United States v. Avila, 610 F. Supp. 2d 391, 395 (M.D. Pa. 2009).

The Third Circuit in U.S. v. Heilman, 377 Fed.Appx. 157, 202 (3d Cir. 2010), further explained when offenses may be joined and stated:

> [C]ounts are similar if they are "somewhat alike" or share "a general likeness," or otherwise have a sufficient logical connection and can be tried using the same evidence. *See* United States v. Rivera, 546 F.3d 245, 253 (2d Cir. 2008); United States v. Graham, 275 F.3d 490, 512 (6th Cir. 2001) ("[W]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate."). Moreover, offenses may be joined if they occurred within a relatively short period of time of each other and the evidence of each overlaps. *See* United States v. Donaldson, 978 F.2d 381, 391 (7th Cir. 1992).

Here, the court finds that all of the offenses against both Torner and Robles were properly joined in the FSI. As the government points out, a plain reading of the FSI shows that "the charged time period during which the [alleged] firearms offenses [against both defendants] occurred overlaps the charged time period of the [alleged] narcotics offenses [against both defendants]". (Doc. 145 at 45). Further, "[t]he explosives offenses [against

Torner] are charged to have occurred mere weeks after the firearms offenses." (Id.) (citing Walker, 657 F.3d at 170 (Third Circuit found that joinder of offenses was proper where the close proximity in time between offenses showed "that the various charges were part of the same series of transactions.")); *see also* Green, 563 Fed.Appx. at 917 (the Third Circuit found that "[t]he approximate month-long time period between each robbery d[id] not militate against joinder," and stated that "charges separated by 'a period of a little over a month ... suggests that the various charges were part of the same series of transactions.'" (quoting Walker, 657 F.3d at 170)).

Additionally, the government states that the firearms conspiracy charge in Count 3 against Torner and Robles "specifically alleges that Torner and Roles possessed firearms while trafficking controlled substances, and lists several firearm purchases that occurred over the 10 months prior to the heroin offense." In fact, in Count 3 of the FSI, it states that "[Torner and Robles] actually, constructively, and jointly possessed firearms while distributing, possessing with intent to distribute, and conspiring to distribute and possess with intent to distribute controlled substances." Moreover, this court is well aware that firearm offenses and drug offenses often go hand in hand and that drug trafficking can show the defendants' motive for possessing illegal firearms. *See* United States v. Stanton, 2013 WL 529930, at *7 (W.D.Pa. Feb. 11, 2013) (court indicated that firearms were the "tools of the drug trade.").

Additionally, the government represents that at trial, "[it] expects to present [ ] multiple recordings of Torner where he claimed to rob other drug

13

dealers to obtain the heroin he sold; an admission that demonstrates both his need to access firearms and his motive, as a convicted felon, to have Robles purchase them." (Id. at 46).

Contrary to the defendants' assertions, the court finds a sufficient temporal proximity between the drug offenses and firearms offenses which they seek to sever, and suggests that these offenses were part of the same series of transactions. The dates of the alleged drug charges overlap with the firearms charges against the defendants and the drug charges occurred during the alleged commission of the firearms charges. Further, the alleged facts contained in the government's pre-trial filings, including its Doc. 145 brief and attached exhibits, regarding the drug offenses and the firearms offenses suggest that they were part of a common scheme on the part of Torner and Robles as well as their other co-defendant.

Thus, the court finds that the drug offenses and the firearms offenses against Torner and Robles constitute "the same series of acts or transactions" among the defendants and were properly joined under Rule 8(b).

The court also finds that the explosives charges against Torner were properly joined with the other charges against him in the FSI. The government states that "the explosives charges [against Torner] specifically reference the offenses occurring while Torner was on pretrial release and under indictment for the narcotics and firearms offenses." (Doc. 145 at 46) (quoting Walker, 657 F.3d at 169) ("Where charges leveled against only a single defendant 'arose directly' from [his] participation in a common illicit enterprise which led

to charges against that defendant and co-defendants, we have held that all of the charges may be considered part of the same series of acts, rendering joinder proper under Rule 8(b).").

Additionally, the government, (Id. at 47), explains:

> The government expects witnesses to testify that, upon obtaining pretrial release, Torner caused C-4 explosives to be planted in the Buck Mt. trailer, which had most recently been inhabited by his co-defendant Alzugaray. The testimony and evidence will establish that Torner's motive was to seek cooperation credit and obtain a favorable resolution to his own matter by directing federal law enforcement officials to the C-4 explosives.

Thus, the government indicates that at trial it intends to show the connection of the underlying drug and firearms offenses charges against Torner in the original indictment with the explosives charges and, that it will show how the explosives charges did not occur in a vacuum. The government also indicates that it "expects one or more witnesses to testify to both the explosives and firearms charges [against Torner]" and that this fact that the charges share common witnesses favors the joinder of the charges. (Id.). The government further points out that even if the court granted Torner's motion for a severance of the explosives charges, it "may still seek to present evidence of the explosives activities in the firearms and narcotics trial, under Rule 404(b)." (Id. at 48) (citing United States v. Green, 617 F.3d 233, 249-52 (3d Cir. 2010)).

The court finds that the government has sufficiently shown that if it was not for the initial underlying drug and firearms offenses against Torner, the subsequent explosives charges against him would not have allegedly

occurred. Thus, the court will allow the joinder for trial of the drug and firearms offenses charges against Torner with the explosives charges against him.

Since the court has found that all of the challenged charges against Torner and Robles were properly joined under Rule 8(b), the court must now determine if these defendants will be prejudice by the joinder under Rule 14(a). "Rule 14(a) allows for the severance of properly joined offenses if a consolidated trial 'appears to prejudice a defendant.'" Green, 563 Fed.Appx. at 917. "Whether to sever is a determination within the sound discretion of the trial judge." U.S. v. Owens, 187 F.Supp.3d 488, 496 (M.D.Pa. 2016) (citation omitted).

In Green, 563 Fed.Appx. at 917, the Third Circuit stated:

> To prevail on a severance claim, a defendant must "pinpoint clear and substantial prejudice resulting in an unfair trial." Id. (quoting United States v. McGlory, 968 F.2d 309, 340 (3d Cir. 1992)). This requires more than showing "severance would have increased the defendant's chances of acquittal." McGlory, 968 F.2d at 340. Rather, "the question of prejudice hinges upon 'whether the jury will be able to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility.'" Walker, 657 F.3d at 170 (quoting United States v. Davis, 397 F.3d 173, 182 (3d Cir. 2005)). Because juries are presumed to follow instructions, jury instructions are "persuasive evidence that refusals to sever did not prejudice the defendant[ ]." Id. at 171 (citing United States v. Lore, 430 F.3d 190, 206 (3d Cir. 2005)).

Robles argues that she will suffer prejudiced from a single trial because the jury will be influenced by the fact that she was charged with drug offenses involving the distribution of heroin and that she was also charged with firearms offenses, and that the jury will infer that there was a connection

between these offenses. However, as the government points out, these are "the precise allegations in the FSI." Further, the drug charges and the firearms charges in Counts 1-3 are against both Torner and Robles and show a connection between these two defendants as well as these charges against them. The firearm charge in Count 4 against Robles is also sufficiently interrelated to the charges in Counts 1-3 against Torner and Robles.

As discussed above, the court also finds that Torner fails to "pinpoint clear and substantial prejudice resulting in an unfair trial" if all of the offenses he is charged with are joined in one trial.

The court finds that a limiting jury instruction will be sufficient for the jury to be able to compartmentalize the evidence and the relatively uncomplicated charges against both Torner and Robles, which is the proper inquiry under Rule 14(a).

In order to minimize any alleged prejudice to Torner and Robles, the court will give the jury the following limiting instruction, which the Third Circuit found appropriate in Heilman, 377 Fed.Appx. at 203:

> "The number of offenses charged is not evidence of guilt and this should not influence your decision in any way. Each count and the evidence pertaining to it must be considered separately. The fact that you may find a defendant not guilty or guilty as to one of the offenses charged in the [first] superseding indictment should not control your verdict as to the other offenses charged in the [first] superseding indictment."

The court will also consider any other requested instruction related to this issue that is submitted by the parties.

Thus, the court finds that Torner and Robles have failed to meet "the

'heavy' burden of showing 'clear and substantial prejudice resulting in a manifestly unfair trial'" if the stated sets of counts against them are not severed. *See Adens, supra*. As such, Torner's motion seeking the court to sever and have a separate trial for his drug charges (Counts One and Two), his firearms charges (Counts Three through Five), and his explosives charges (Counts Seven and Eight) will be denied. Robles's motion for the court to sever and have a separate trial for her drug charges (Counts and Two), and her firearms charges (Counts Three and Four) will be denied.

### *2. Motions for Severance of Torner and Robles from Co-Defendant Alzugaray and From Each Other and to Bifurcate the Trial*

Torner and Robles move the court to sever their respective trials from one another and from co-defendant Alzugaray. Specifically, Torner moves to have his trial severed from that of his co-defendants, Robles and Alzugaray. Robles moves to have her trial severed from that of her co-defendants, Torner and Alzugaray. In support of their motions, Torner and Robles argue that their trials should be severed due to prejudice arising from a potential "guilt by association" and "spillover effect", and due to a possible Confrontation Clause issue if the government presents statements at trial made by one defendant that are incriminating against the other defendants. Additionally, Torner argues that his co-defendants will present defenses at trial that will undermine his case, and that he will suffer prejudice in the eyes of the jury since he is charged with more offenses than his co-defendants. Robles also contends that if she is tried with her co-defendants, she will not be able to present her

co-defendants as her witnesses to provide exculpatory testimony since they will assert their Fifth Amendment right against self-incrimination.

Initially, since all three defendants are charged in Counts One and Two with conspiracy to distribute heroin and distribution of heroin over the same time period, this weighs in favor of trying the defendants jointly. Further, Torner and Robles are charged in Count Three with firearms conspiracy and the allegations in this count regarding their manner, means, and overt acts joins these two defendants. Since the FSI shows that the stated counts are all part of the same scheme, the defendants are properly joined for trial under Rule 8(b). *See* Walker, 657 F.3d at 170. As the court stated in United States v. Tutis, 167 F.Supp.3d 683, 693 (D.N.J. 2016), "any prejudice from a joint trial would be minimal, particularly because the Indictment alleges that Defendant [ ] and his co-defendants [ ] engaged in a single drug-trafficking conspiracy." The *Tutis* Court pointed out that "acts committed by one co-conspirator in furtherance of the conspiracy become admissible against all co-conspirators." Id. (citations omitted). As such, "acts committed by one in furtherance of the conspiracy were admissible against the other." United States v. Hart, 273 F.3d 363, 370 (3d Cir. 2001).

Thus, the court finds that the defendants can be tried together under Rule 8(b).

However, under Rule 14, the court may sever the defendants' trials if the joinder of the defendants appears to prejudice a defendant. "To establish a violation of Rule 14, a defendant must show that the 'denial of severance

19

would lead to clear and substantial prejudice resulting in a manifestly unfair trial.'" U.S. v. Staton, 605 Fed.Appx. 110, 114 (3d Cir. 2015) (citation omitted). "A court should therefore grant a severance 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" Id. (citing Zafiro v. United States, 506 U.S. 534, 539–40, 113 S.Ct. 933 (1993)). Further, mere speculation and generalized allegations of prejudice by the defendant are insufficient. Id..

> As the government explains in its brief:

> much of the evidence at trial will be introduced to prove the existence of a drug trafficking conspiracy between Torner, Robles, and Alzugaray, and a firearms conspiracy between Torner and Robles. Should the jury agree, it would appropriately and justifiably attribute some or all of that evidence to all defendants charged in each respective conspiracy. Acts committed by one co-conspirator in furtherance of the conspiracy become admissible against all co-conspirators.

(Doc. 145 at 37) (citing United States v. Hart, 273 F.3d 363, 370 (3d Cir. 2001). *See also* United States v. Thompson, 219 F.Supp.3d 502, 507 (M.D.Pa. 2016) ("A conspiracy charge 'provides a common link and demonstrates the existence of a common plan' for purposes of Rule 8(b).") (citation omitted).

The court finds that Torner and Robles have failed to satisfy the "heavy burden" to show that they are entitled to separate trials. They have also failed to "pinpoint clear and substantial prejudice" from the joinder of their trial with their co-defendants. Id. (citation omitted). At best, the defendants have only

shown that "severance [may increase] [their] chances of acquittal" which is not sufficient. McGlory, 968 F.2d at 340. In Staton*,* 605 Fed.Appx. at 115, the court stated that "a defendant is not entitled to a severance merely because evidence against a co-defendant is more damaging than the evidence against the moving party." (quoting Lore, 430 F.3d at 205). Nor have defendants made a showing that the jury will not be able to compartmentalize any evidence against them regarding the drug charges and the firearms charges they face. *See id.* Further, this is not an overly complex case and the evidence against the defendants appears to be "relatively straight-forward", *id*., and the jury should be able to compartmentalize it without difficulty. Additionally, as mentioned, the court will instruct the jury to "separately consider the evidence against each defendant on each of the offenses charged" and, it will tell the jury that its "decision on any one defendant or any one offense ... should not influence [its] decision on any of the other defendants or offenses." Id. As the Third Circuit stated, *id*., "[j]urors are presumed to follow their instructions." (citation omitted).

To further alleviate any potential prejudice to the defendants, the government states that it "anticipates requesting leave to dismiss Count Six of the [FSI], which charges Alzugaray with being an illegal alien in possession of a firearm and ammunition." (Doc. 145 at 39). The limiting jury instruction that the court will give alleviates any possible prejudice to Robles with respect to the evidence presented regarding the explosives charges against Torner.

Insofar as Torner and Robles argue that they should be granted

separate trials based on the Confrontation Clause, they have not specified any incriminating statements made by a co-defendant that may be used against them. "In *Bruton* [391 U.S. 123-24], the Supreme Court held that the introduction of a non-testifying defendant's out-of-court statement, which directly implicated his co-defendant by name, violated the Confrontation Clause right of the co-defendant." U.S. v. McLaughlin, 2013 WL 996266, *5 (M.D.Pa. March 13, 2013). Neither Torner nor Robles are certain if a *Bruton* problem exists in this case. Rather, Torner states that the government should submit all of the statements of his co-defendants to the court for an in camera review. Robles simply does not specifically know whether a *Bruton* problem is presented in this case.

The government, (Doc. 145 at 40-41), states that "[d]uring the course of pretrial discovery, [it] has disclosed to all defendants every co-defendant statement within [its] possession", and that "[d]espite this transparency, neither defendant has pinpointed a statement that triggers a potential *Bruton* issue." The government, (Id.), also represents that if, "in the course of pretrial preparation, [it] identif[ies] any co-defendant statement that gives rise to a potential *Bruton* issue (thus far it has not), it can notify defense counsel and apply appropriate redactions in advance of trial."

Since both defendants have all of the statements made by co-defendants which the government possesses, the court will not perform counsel's work and review in camera these statements in order to fish for a *Bruton* issue. Further, neither defendant has specified any incriminating

statement of a co-defendant. While "a *Bruton* violation can occur if a statement is admitted into evidence at trial that on its face incriminates the objecting defendant", McLaughlin, 2013 WL 996266, *8 (citation omitted), here, Torner and Robles fail to identify any such statement.

Additionally, "a witness's statement implicates the Confrontation Clause only if it is testimonial", and *Bruton* is limited to "testimonial statements." Id. at *9 (citations omitted). Thus, if any co-defendant testifies against either Torner or Robles, they will have their Sixth Amendment right of confrontation since they will be able to cross-exam the co-defendant at trial.

Next, Robles argues that if she is jointly tried with her co-defendants, it might deprive her of obtaining exculpatory testimony from a co-defendant. However, as the government points out, "Robles has failed to identify which co-defendant could provide exculpatory testimony, and whether that co-defendant actually would testify." (Doc. 145 at 41). Further, as the government states, "Robles also fails to elucidate whether the anticipated co-defendant's testimony would be exculpatory and to what degree. She has not provided an affidavit or any other information in support of her claim.  And she does not specify the nature of the codefendants' proposed testimony." The best that Robles does in her reply brief is state the she"...*believes* that both codefendants will testify on her behalf and their testimony will be exculpatory." (Doc. 154). As the court found in Thompson, 219 F.Supp. 3d at 514-15, "[the defendant] provides no basis to believe any co-defendants would testify, how such testimony would exculpate him, whether the witnesses could be

impeached, and why separate trials is not at odds with the interests of judicial economy." Thus, Robles' unsubstantiated claims of testimonial prejudice are not sufficient. Id.

In balancing "the potential prejudice to the defendant[s] against the advantages of joinder in terms of judicial economy", which the court must do, Tutis, 167 F.Supp.3d at 692, the court finds that a joint trial for all three defendants is appropriate especially since the government states that "should severance be granted, the government would present substantially identical evidence at the separate trials, for both the narcotics and the firearms offenses." (Doc. 145 at 38). In fact, "[a]cts and statements of co-conspirators in furtherance of the charged conspiracy are admissible even against a single, severed defendant at trial, if the government satisfies Fed.R.Evid. 801(d)(2)(E) by proffering evidence of the existence of the conspiracy and the defendant's knowing membership in it." Tutis, 167 F.Supp. 3d at 693. Thus, "even if the Court granted severance, much, if not all, of the evidence concerning [the defendant's] alleged conspirators could still be presented as against him." Id. (citation omitted); *see also* McLaughlin, 2013 WL 996266, *8 ("Public interest in judicial economy favors joint trials where, [as here], the same evidence would otherwise be presented at separate trials of defendants charged with a single conspiracy.") (quoting Johnson v. Tennis, 549 F.3d 296, 302 (3d Cir. 2008)).

Accordingly, the motions for a severance of trials by Torner and Robles will be denied.

### *3. Torner's Motion to Bifurcate or for a Severance of Counts*

Torner also moves to bifurcate or for a severance of Counts 3, 4, 5 and 8 based on the felon in possession of a firearm element in these counts.[3]

Initially, since Count 4 does not name Torner and is only against Robles, Torner cannot seek either bifurcation or severance of this Count. Also, as the government states, (Doc. 145 at 49), "evidence of Torner's prior conviction fails to give rise to any prejudice against Robles." Further, as the government explains, (Id. at 51), since "Robles is charged with conspiring to have Torner possess firearms and ammunition as a convicted felon (Count Three), and with providing firearms to a convicted felon (Count Four)", and since "[e]ach of those offenses requires the government to prove that Torner was a felon and that Robles knew of his felon status, including as the very object of the conspiracy", "Torner has no grounds to prohibit the jury from hearing such evidence in the charges against Robles." Indeed, if the government were precluded from introducing evidence that Torner was a convicted felon at trial, the government would not be able to prove the charges against Robles in Counts 3 and 4.

In support of his motion for bifurcation or severance, Torner cites to Old Chief v. United States, 519 U.S. 172 (1997), for support.

In U.S. v. Higdon, 638 F.3d 233, 241-42 (3d Cir. 2011), the Third Circuit

---

[3]On July 2, 2018, Torner and the government filed a stipulation agreeing that prior to May 12, 2012, Torner was convicted of a felony, i.e., a crime punishable by imprisonment for a term exceeding one year. (Doc. 142).

considered whether *Old Chief* stands for "the proposition that evidence of a defendant's prior conviction is not admissible when a defendant offers to stipulate to the conviction" and found that it does not. Rather, the Third Circuit in *Higdon, id.*, explained the holding of *Old Chief* as stated:

> [The Supreme Court] held only that the "name or general character of that crime" need not be disclosed because "the fact of the qualifying conviction is alone what matters under the statute [i.e., §922(g)(1)]." Id. at 190, 117 S.Ct. 644. In fact, the Court anticipated that a jury would be informed of the stipulation about a defendant's prior conviction. The Court explained that: "the most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possession of a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions." Id. at 190–91, 117 S.Ct. 644. Thus, the Supreme Court did not hold, as [defendant] contends, that the jury need not be informed of the fact of a prior conviction when that prior conviction is an element of the charged offense. On the contrary, the Court affirmed that the jury must still be made aware of the existence of a defendant's prior conviction.

*See also* United States v. Chevere, 368 F.3d 120, 121 (2d Cir. 2004) (The Second Circuit held that "[a]lthough a defendant may, by stipulating that he has a prior felony conviction, prevent the jury from hearing the nature or underlying facts of the conviction, he may not prevent the jury from learning the fact that he has a prior felony *conviction—a 'crucial element' of the offense*." (emphasis in original).

Thus, since Torner's prior felony conviction is a critical element of the offenses charged in Counts 3, 5 and 8, the court is required to instruct the jury about all elements of this offense, the jury will be informed of the stipulation that defendant has a prior felony conviction that falls within the class of crimes

that Congress determined should bar a person from possession of a gun and explosives. *See* United States v. Santiago-Rivera, 2017 WL 4551039, at *2-3 (M.D.Pa. Oct. 12, 2017). As such, since evidence of Torner's prior felony conviction is otherwise admissible with respect to proving Counts 3, 5 and 8 in the FSI, severance or bifurcation is not appropriate. Stanton, 2013 WL 529930, at *5.

Thus, Torner's motion to bifurcate or for a severance of Counts 3, 4, 5 and 8 based on the felon in possession of a firearm element will be denied.

### 4. Torner's and Robles' Motions in Limine

Torner filed a motion in limine in which he seeks to preclude the government from using any of the following evidence at his trial:

> a) evidence that Torner may have been being investigated for arson and/or fraud offenses,
> b) evidence that Torner may have been involved in prior drug trafficking offenses,
> c) evidence that Torner may have been involved in prior firearms offenses, or incidents involving firearms,
> d) evidence pertaining to alleged acts of violence and/or alleged suspicious deaths.

Torner generally argues that any of the above evidence is irrelevant and immaterial to the offenses charged against him. Further, he states that any evidence of other crimes, wrongs, or acts would not be admissible under FRE 404(b). Torner also contends that such evidence should be precluded under FRE 403 since the probative value of such evidence is substantially outweighed by the danger of unfair prejudice. Torner fails to discuss in his brief any specific evidence regarding the above categories which he seeks to

preclude from admission at trial.

Robles joins in Torner's motion in limine. However, as the government states, "[Robles] fails to identify what specific evidence she seeks to exclude or how the categories of evidence identified by Torner pertain to her." (Doc. 145 at 55).

"To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it."[4] United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010).

At the outset, since the court has already discussed Torner's request to preclude any reference to his status as a convicted felon based on *Old Chief*, the court will not repeat it.

Next, the government represents that "subject to unexpected developments at trial, [it] does not seek to introduce any evidence of uncharged arson and fraud offenses against either Torner or Robles" and, that "[it] does not seek to introduce any evidence of uncharged 'suspicious deaths'" against Torner. (Id. at 56, 60). Thus, the motions in limine to preclude any evidence that Torner may have been investigated for uncharged arson and/or fraud offenses and any evidence that Torner may have been involved with any uncharged "suspicious deaths" will be granted, and the government

---

[4]As indicated above, the court will give the jury a limiting instruction that some other illegal act by a defendant is not proof that he or she committed the offenses charged in the indictment.

will be precluded from introducing any such evidence.

Insofar as Torner seeks to preclude the government from introducing any evidence pertaining to alleged acts of violence, the government states that "[it] does not seek to introduce any evidence of uncharged conduct." (Id. at 60). However, the government explains that if "Torner construes his multiple admissions of robbing other drug dealers, the videotaped altercation where he pointed a firearm at Alzugaray, or incidents where he brandished and pointed firearms at others as 'acts of violence,' that evidence is admissible." (Id.). As mentioned, Torner fails to specify in his motion and brief exactly what evidence he seeks to preclude which shows that he may have been involved in prior firearms offenses or incidents.

Specifically, to the extent that Torner seeks to preclude the introduction of any evidence that he may have been involved in prior firearms offenses or incidents, the government states that "[it] will not seek to introduce evidence and testimony of Torner's firearms offenses or incidents prior to the charged time period of May 12, 2012, through August 28, 2017." Thus, the court will preclude the government from introducing evidence and testimony regarding any of Torner's firearms offenses or incidents which occurred prior to the charged time period of May 12, 2012, through August 28, 2017. However, to the extent Torner may also be seeking to preclude any evidence and testimony that either he or Robles possessed firearms during the time period charged in the FSI, his motion will be denied since this evidence is admissible as it is intrinsic to the charged firearms offenses. Absent such evidence, the government simply would not be able to prove the firearms offenses against

Torner and Robles.

Lastly, Torner's motion in limine seeks to preclude the government from introducing any evidence that he may have been involved in prior drug trafficking offenses. Again, Torner fails to offer any specifics regarding his motion.

The government filed a Rule 404(b) notice in which it disclosed evidence it intends to use at trial. (Doc. 111). In its notice, the government indicated that "[it] anticipates that a confidential informant (CI-1) will testify about meeting Torner in the fall of 2014. During that meeting, CI-1 sold a quarter ounce of crystal methamphetamine to Torner, who initially offered to trade heroin for the crystal methamphetamine, but eventually paid cash."(Id. at 56). The government then states, (Id. at 56-57), that it also expects CI-1 to testify that, "several months after the crystal methamphetamine transaction occurred, Torner approached CI-1 to elicit CI-1's assistance in trafficking heroin (not knowing that CI-1 had begun working as an informant)" and, that "Torner's knowledge of and attempt to enlist CI-1's connections in the drug trafficking world (evidenced by his prior crystal methamphetamine transaction with CI-1) demonstrated his intent to distribute and possess with the intent to distribute heroin, as charged in Counts One and Two of the [FSI]." The government also states, (Id. at 57), that this evidence and testimony of CI-1 will go to prove Torner's criminal intent with respect to the conspiracy to distribute heroin charge, Count 1, and that its evidence includes a recorded conversation between CI-1 and Torner allegedly in which the CI-1 questioned whether the heroin Torner offered for sale was of the same quality as the

sample heroin he provided to CI-1 previously. The government states that Torner then mentioned their prior methamphetamine transaction in order to convince CI-1 to trust the quality of the heroin in the subsequent transaction.

Additionally, the government states that it intends to also present evidence that Torner left a voicemail with CI-1 when law officers tried to set up another controlled buy from Torner in which he disclaimed any relationship or business with CI-1. The government states that "Torner's contrary activities with CI-1 during the [2014] crystal methamphetamine transaction refute this defense, rendering the evidence highly probative." (Id. at 58).

Further, the government states that it will introduce "two recordings of Torner during which he described obtaining drugs for redistribution by robbing other drug dealers, with the assistance of co-conspirators."

The court finds that the stated evidence is intrinsic to the heroin offenses against Torner, since, as the government states, "it not only shows the source of Torner's heroin, but is a clear admission on his part to his trafficking activities." (Id. at 58-59).

Thus, the court agrees with the government that all of this evidence showing that Torner's involvement in prior drug trafficking activities and offenses is admissible since it "qualifies as evidence of Torner's knowledge that he was involved in narcotics trafficking, his motive for approaching CI-1, and his plan and preparation for distributing heroin." (Id. at 57-59). As such, this evidence falls within Rule 404(b)'s exceptions to show Torner's knowledge or absence of mistake. The court also finds that the probative value of such evidence is not substantially outweighed by any unfair

prejudicial effect. *See* U.S. v. Alfred, 436 Fed.Appx. 285 (3d Cir. 2013).

## IV.    CONCLUSION

Based on the foregoing, the court will **DENY** Torner's and Robles' motions for severance of offenses and motions for a severance of the trial. The court will also **DENY** Torner's motion to bifurcate or for a severance of Counts 3, 4, 5 and 8. Further, the court will **GRANT IN PART** and **DENY IN PART** Torner's and Robles' motions in limine to preclude the introduction at trial certain evidence. An appropriate order will issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Date: July 24, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2017 CRIMINAL MEMORANDA\17-343-01.wpd