**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **3:17-CR-343** |
| **v.** | : | **(JUDGE MANNION)** |
| **ROBERTO TORNER,** | : | |
| **LIZA ROBLES, and** | | |
| **DAVID ALZUGARAY-LUGONES,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Pending before the court are two motions to suppress evidence, (Doc. 112), filed by defendant Roberto Torner. Liza Robles subsequently filed a motion to join Torner's motions to suppress. (Doc. 120). Defendants allegedly engaged in a conspiracy to distribute and possess with intent to distribute heroin, as well as a firearms conspiracy. (Doc. 18). Defendant Robles is separately charged with the transfer of firearms and ammunition to Torner. (Doc. 18). The defendants seek to suppress the evidence seized from the Cottage Hotel and the Centre St. residence, during the execution of a search warrant on the grounds that the affidavit failed to establish probable cause for the search. The gist of the defendants' arguments is that the entirety of the search and seizure of evidence in both the Cottage Hotel and the Centre St. residence was in violation of the Fourth Amendment based on their legitimate expectations of privacy in both the hotel and the residence, respectively. In

addition, the defendant Torner argues that "the good faith exception to the exclusionary rule is inapplicable." (Doc. 113). Further, the defendants request an evidentiary hearing. For the reasons discussed below, the motions will be **DENIED** without an evidentiary hearing.[1]

## I.    LEGAL STANDARD

Protection against unreasonable searches and seizures is enshrined in the Fourth Amendment, which states:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. Const. amend. IV.

Accordingly, the Fourth Amendment lays out four requirements of a valid search warrant. The warrant must: 1) be based on probable cause; 2) be supported by a sworn affidavit; 3) describe particularly the place of the search; and 4) describe particularly the persons or things to be seized. Groh v. Ramirez, 540 U.S. 551, 557 (2004).

The district court conducts only a deferential review of the initial

---

[1]Both the factual background and the procedural history is more thoroughly set out in the court's previous memorandum filed on July 24, 2018 (Doc. 155), so they will not be restated here. The court also notes that it conducted an evidentiary hearing only regarding Torner's motion to suppress evidence seized from the Buck Mt. trailer on July 17, 2018, and at the conclusion of the hearing, the court denied the motion.

probable cause determination made by the Magistrate Judge regarding a search. U.S v. Stearns, 597 F.3d 540, 554 (3d Cir. 2010) (citing Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317 (1983)). "The role of a reviewing court is not to decide probable cause *de novo*, but to determine whether 'the magistrate [judge] had a substantial basis for concluding that probable cause existed.'" Id. (citation omitted). "If a substantial basis exists to support the magistrate [judge's] probable cause finding, [the court] must uphold that finding ...." Id. Doubtful or marginal cases should be "largely determined by the preference to be accorded to warrants." Id. (citation omitted). In evaluating a search warrant application, "the magistrate [judge] must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (citation omitted). A search warrant can be issued even when supported by an affidavit which does not contain direct evidence linking the crime with the place to be searched. Id. "Probable cause can be, and often is, inferred from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence].'" Id. (citation omitted).

The exclusionary rule calls for the suppression of evidence obtained during an unconstitutional search or illegal seizure. In United States v. Leon, 468 U.S. 897, 916, 920 (1984), the Supreme Court recognized that the goals of deterrence would not be furthered "when an officer acting with objective

3

good faith has obtained a search warrant from a judge or magistrate [judge] and acted within its scope." Hence, the "good faith exception" to the exclusionary rule arose from *Leon*. The Supreme Court later clarified that the exclusionary rule can only be triggered where "police conduct" is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring v. United States, 555 U.S. 135, 136, 129 S. Ct. 695, 697, 172 L. Ed. 2d 6 (2009).

"The independent source doctrine serves as an exception to the exclusionary rule and permits the introduction of 'evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality.'" U.S. v Stabile, 633 F.3d 219, 243 (3d Cir. 2011), cert. denied, 132 S.Ct. 399 (2011) (citations omitted).

## II.     DISCUSSION

This court has jurisdiction over the motions to suppress under 18 U.S.C. §3231.

The Fourth Amendment "protection is triggered only if the state invades an area in which the person has a 'constitutionally protected reasonable expectation of privacy.'" U.S. v. Donahue, 764 F.3d 293, 298 (3d Cir. 2014) (citations omitted). Torner and Robles move to suppress all evidence

4

recovered during the August 28, 2017 search warrant executions at the Cottage Hotel and the Centre St. residence, including firearms, ammunition, and a home surveillance video that shows Torner wielding a handgun. They contend that the affidavit of ATF Special Agent Michael O'Donnell in support of the search warrant applications lacked sufficient probable cause.

Initially, the court finds that defendant Torner has sufficiently shown legitimate expectations of privacy in both the Cottage Hotel and the Centre St. residence and thus, has standing to challenge the search in both locations.[2] However, the court finds that while defendant Robles has sufficiently shown legitimate expectations of privacy in the Centre St. residence because she resides there, she does not have standing to challenge the search in the Cottage Hotel because she has not set forth the premise for her reasonable expectation of privacy in that location. Although she argues that this is her workplace and she was allowed to place both work and personal belongings within a designated room ("Unit 2") at the hotel, the court finds that this is not substantial enough for her to have standing to state a valid claim for protection under the Fourth Amendment.

Fourth Amendment rights are "personal" and the two defendants "bear[]

---

[2]The court recognizes that "standing to challenge a search is not a threshold issue that must be decided before reaching the question of whether a search was or was not constitutional." U.S. v. Kennedy, 638 F.3d 159, 163 (3d Cir. 2011). Nonetheless, the court is required to address whether Torner and Robles have standing to challenge the search of both the Cottage Hotel and the Centre St. residence. *See* Stearns, supra.

5

the burden of proving not only that the search ... was illegal, but also that [they] had a legitimate expectation of privacy in [room 104]." Stearns, 597 F.3d at 551 (citations omitted). "Fourth Amendment standing 'requires that the individual challenging the search have a reasonable expectation of privacy in the property searched ... and that he manifest a subjective expectation of privacy in the property searched[.]'" Kennedy, 638 F.3d at 163 (quoting U.S. v. Baker, 221 F.3d 438, 441 (3d Cir. 2000)). "[A] reasonable or legitimate expectation of privacy must have 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" Id. (citations omitted). The question of whether a person has legitimate expectation of privacy "turns on two specific questions: '(1) whether the individual demonstrated an actual or subjective expectation of privacy in the subject of the search or seizure; and (2) whether this expectation of privacy is objectively justifiable under the circumstances.'" Donahue, 764 F.3d at 298-99 (citation omitted).

**A. Search at 559 Washington Street ("Cottage Hotel")**

The Cottage Hotel has been owned by Robert Torner in some capacity since 2013.[3] (Doc. 151-1). Although the court made a previous determination that defendant Robles does not have standing in the Cottage Hotel location,

---

[3]Torner bought the Cottage Hotel in 2013, and subsequently sold it to a company owned by himself in 2014.

even if she did have standing, the discussion below still pertains to her.

On August 28, 2017, the search warrant was executed at the Cottage Hotel searching primarily for evidence of illegal firearms possession, arson, insurance fraud, and narcotics trafficking. (Doc. 151-1). The searchers were only allowed to search the office space, common areas, and the second and third floors of the Cottage Hotel. (Doc. 151-1). During this search warrant execution, law enforcement officer recovered three firearms amongst Torner's possessions as well as other firearm paraphernalia.[4] (Doc. 151-1).

Torner argues that "probable cause did not exist to justify the issuance of the search warrants at issue and that any evidence seized from the Washington Street and Centre Street properties should be suppressed" because, he contends, that each individual circumstance used as the premise for the warrant, as well as the combination of all circumstances, do not establish probable cause for the search. (Doc. 113). However, the Government contends that the search of the Cottage Hotel was supported by probable cause, or, good faith reliance on a validly issued search warrant. The probable cause inquiry "is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.'" Donahue, 764 F.3d at 301 (citation omitted).

---

[4]The affidavit did not specify what was recovered individually from both the Centre Street residence and the Cottage Hotel location, so for the purposes of this memorandum the recovery of items will be discussed together.

In determining probable cause, the court evaluates "the events which occurred leading up to the ... search, and then ... [decide] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to ... probable cause." Id. (quoting Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–62 (1996)). The court finds that there was a "fair probability that contraband or evidence of a crime" would be found in the Cottage Hotel and thus, there was probable cause for the search. Id. (citation omitted). "When the crime under investigation is drug distribution, a magistrate [judge] may find probable cause to search the target's residence even without direct evidence that contraband will be found there." Stearn, 597 F.3d at 558.

The court finds that the affidavit of Special Agent O'Donnell, (Doc. 147-1), executed on August 22, 2017, established a nexus between the Cottage Hotel and Torner when Torner was linked to both drug sales at the location, as well as possession of a firearm as a convicted felon. As the Government states in its brief in opposition, (Doc. 145 at 25), "[t]he ATF [ ] determined that, in a parallel investigation in June 2015, the defendants had sold heroin to a confidential informant for the Luzerne County Drug Task Force, with events during the drug deal occurring at both the Cottage Hotel and at the Centre St. residence. [Doc. 147-1] at ¶¶ 95-98." According to the affidavit, Torner asked a CI to bring product, later determined to be heroin, into the area. Torner then brought the confidential informant to the hotel, and while at the hotel an

8

unknown individual, at Torner's direction, brought a small baggy full of a substance later determined to be heroin. The CI was told by Torner to meet at the Cottage Hotel and requested to buy 2 grams of heroin, however Torner declined and said that he would only sell large quantities of heroin. (Doc. 147-1, ¶'s 95-98).

The Cottage Hotel has also been a location of various other law enforcement-involved incidents including a stabbing during which Torner allegedly wielded a firearm. Further, the affidavit was based on some evidence that the Cottage Hotel contained contraband linking it to the drug sales with a confidential informant. (Id.). The court bases its findings on the information provided in the affidavit regarding both illegal drug transactions and illegal firearm transactions that occurred at the Cottage Hotel. This evidence corresponded with what was recovered at the Cottage Hotel, including various loaded and unloaded firearms, firearm paraphernalia as well as a large sum of money in a hidden location. Police Chief Harris, who was the Police Chief for the City of the Freeland Police Department, also averred that he has knowledge of the Cottage Hotel and he was personally aware that the Cottage Hotel was a place frequently used for illegal activities and disturbances including some incidents that involved Torner. (Id., ¶'s 48-49).

The affidavit also established probable cause that Robles and Torner conspired so that Robles would purchase firearms and Torner would have

access to them at both the Centre St. residence and the Cottage Hotel. The affidavit specified that the search would focus on looking for firearms purchased by Robles that the ATF had reason to believe were possessed at both of the stated properties. (Id., ¶'s 101-102).

As such, all of the circumstances in O'Donnell's affidavit established a fair probability to believe contraband would be found the Cottage Hotel, including Torner's previous agreement to sell narcotic to a CI, and the evidence of the illegal firearms located on the property provided the probable cause to arrest Torner on drug-related charges. *See* Stearn, 597 F.3d at559-60 (citations omitted).

While the court finds the search warrant valid, even if the search warrant had been found to be lacking in probable cause, the "good faith exception" under *Leon* would apply in this case. Under the good faith exception, suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." U.S. v. Williams, 3 F.3d 69, 74 (3d Cir. 1993). In United States v. Katzin, 769 F.3d 163, 171 (3d Cir. 2014), the Third Circuit discussed factors that should be balanced to determine whether the good faith exception applied, and stated "[w]here the particular facts of a case indicate that law enforcement officers act[ed] with an objectively reasonable good-faith belief that their conduct [was] lawful, or when their conduct involve[d] only simple, isolated negligence, there is no illicit conduct to deter." However, the court stated that "where law

10

enforcement conduct is deliberate, reckless, or grossly negligent or involves recurring or systemic negligence", then the "deterrence benefits of suppression" carries more weight. Id. The Third Circuit in United States v. Werdene, 883 F.3d 204, 216 (3d Cir. 2018), concluded that "in each of the Supreme Court's good-faith exception cases, 'the Court has not focused on the type of Fourth Amendment violation at issue, but rather confined the 'good-faith inquiry ... to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" (citations omitted).

Thus, "[t]he test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorization.'" U.S. v. Loy, 191 F.3d 360, 367 (3d Cir.1999) (quoting Leon, 468 U.S. at 922 n. 23). "The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." U.S. v. Bratcher, 2014 WL 5089729, *9 (W.D.Pa. Oct. 9, 2014) (citations omitted). "[T]he good faith exception requires objectively, not subjectively, reasonable conduct." Id. (citing Leon, 468 U.S. at 919–20 & n. 20).

In this case, the officers who conducted the Cottage Hotel search endeavored to conduct a thorough investigation of the alleged illegal drug and firearm activity, and acted in good faith in obtaining the search warrant. The search warrant application was vetted through the U.S. Attorney's Office and

11

was then reviewed and approved by a United States Magistrate Judge. (Doc. 147-1). Judging the actions of the police officers under an objective standard, the court finds that they reasonably relied on the well scrutinized warrant. *See* United States v. Tracey, 597 F.3d 140, 153 (3d Cir. 2010) ("A reasonable officer would also have confidence in the validity of the warrant after presenting it and having it approved by a [U.S. Attorney] and the Magistrate Judge"); *see also* Werdene, 883 F.3d at 217 (Third Circuit held that since the "warrant was issued by a neutral and detached, duly appointed magistrate judge, who determined that the warrant was supported by probable cause and particularly described the places to be searched and things to be seized", "[t]his, on its own, is sufficient for us to determine that the FBI acted in good-faith, especially because there is no evidence that it exceeded the scope of the warrant.") (citations omitted). "[E]ven in the absence of probable cause for the issuance of the warrant, the evidence should not be suppressed where, as here, law enforcement reasonably relied on it." *See* United States v. Pavulak, 700 F.3d 651, 663-64 (3d Cir. 2012). Moreover, the officers acted within the scope of the warrant, as discussed above.

There are four situations in which the good faith exception would not apply, namely:

> (1) [when] the magistrate [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit;
> (2) [when] the magistrate [judge] abandoned his judicial role and failed to perform his neutral and detached function;
> (3) [when] the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its

existence entirely unreasonable"; or
(4) [when] the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

Bratcher, 2014 WL 5089729, *9 (citing Hodge, 246 F.3d at 308); *see also* Werdene, 883 F.3d at 217.

Torner does not argue that any of the abovementioned four situations apply to the case presently before the court. (Doc. 113). Based on all of the circumstances averred in the affidavit, the officers who conducted the search sufficiently established that there was a nexus between the Cottage Hotel location, Torner, and the illegal drug and unlawful firearm activity, and that there was a fair probability that evidence of this network would be found at the Cottage Hotel. Special Agent O'Donnell averred in his affidavit that he had received advanced training in the investigation of federal violations including stolen firearms and firearms trafficing, as well as being an ATF agent who specializes in the investigation of groups of individuals who have committed violations of the federal firearms and narcotics laws. (Doc. 147-1 at 1). The warrant in this case was not facially deficient and it did not fail to particularize the place to be searched or the things to be seized and thus, the officers conducting the search could reasonably presume it to be valid. *See* Leon, 468 U.S. at 923. Nor did Torner present any evidence to show that the officers should have known that the search warrant was deficient except for claiming that the search warrant was "broad." As such, "even if the search warrant was deficient, it was not lacking in indicia of probable cause and the good

13

faith exception is applicable in this instance." Bratcher, 2014 WL 5089729, *9.

Moreover, the Supreme Court regards exclusion of evidence as an "extreme sanction" that "should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule," which center on deterring police misconduct. Leon, 468 U.S. at 916, 918; *see also* Werdene, 883 F.3d at 217 ("the exclusionary rule 'applies only where it 'result[s] in appreciable deterrence.'") (emphasis original) (citations omitted). Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants "offends basic concepts of the criminal justice system." Leon, 468 U.S. at 907-08. This case does not warrant such a severe measure.

Therefore, this court finds that the motions to suppress the evidence seized from the Cottage Hotel search of Torner and Robles is **DENIED**, and none of the evidence seized from this search will be suppressed.

**B. Search at 631-639 Centre St. Location ("Centre St. Residence")**

Because the affidavit for probable cause was for all three searches at issue in this case, the evidence from the search, legal analysis and conclusion from the section above is incorporated herein, so the court need not fully restate it.

The Center Street Residence has been owned by Robert Torner in

14

some capacity since 2013.[5] Both defendants Torner and Robles live at the Centre Street Location, so therefore there is no question of standing under the Fourth Amendment.

On August 28, 2017, the search warrant was executed at the Centre Street residence searching primarily for evidence of illegal firearms possession, arson, insurance fraud, and narcotics trafficking. (Doc. 147-1). During this search warrant execution, law enforcement recovered, among other things, five firearms both loaded and unloaded amongst Torner's other possessions, approximately 1,500 rounds of ammunition, $4,000 in a hidden location, electronic devices, personal papers and other firearms paraphernalia. (Doc. 147-1).

However, this court again finds that the August 22, 2017 affidavit of Special Agent O'Donnell, (Doc. 147-1), established a nexus between the Centre Street residence and Torner when Torner was linked to drug sales at the residence. On one occasion, ATF agents observed a Chevrolet Suburban registered to Robles parked outside of the Centre Street residence, and observed co-defendant Alzugaray loading items into an unmarked decommissioned ambulance across the street from the location. (Doc. 147-1, ¶ 58). On another occasion a CI met Torner at the Centre Street residence and Torner left after saying that someone else would meet him there shortly.

---

[5] Torner bought the Center Street Residence in 2013, and subsequently sold it to a company owned by himself in 2014.

After Torner left, ATF agents saw Alzugaray arrive at the Centre Street Location, retrieve a package from a shrub a block away, hand the package off to CI #1, and enter the Centre Street residence. (Doc. 147-1, ¶ 98). Specifically, the affidavit discusses a meeting between Torner and CI #1 on June 8, 2015, at the Centre Street residence where the informant met Torner and Robles. Torner discussed the sale of heroin with CI #1 and the informant bought five grams of heroin from Torner. They also discussed further drug transactions. CI #1 later returned to the Centre Street residence and again met Torner there. Torner told him that someone else would meet him there. After Torner left, Alzugaray arrived at the location and got a package in a shrub about one block away and gave it to CI #1. The package was later tested by officers and was contained 4.78 grams of heroin. (Doc. 147-1, ¶'s 97- 98).

The court bases its findings that there was sufficient probable cause for the search at the Centre Street residence on the information provided in the affidavit regarding both illegal drug transactions and illegal firearm transactions that occurred at the Centre Street residence. This evidence corresponded with what was recovered at the Centre Street residence, including various loaded and unloaded firearms, firearm paraphernalia as well as a large sum of money in a hidden location.

As such, all of the circumstances in O'Donnell's affidavit established a fair probability to believe contraband would be found the Centre Street

16

residence, including Torner's previous agreement to sell narcotic to a CI there, and the evidence of the illegal firearms located on the property provided the probable cause to arrest Torner on drug-related charges. *See* Stearn, 597 F.3d at 559-60 (citations omitted).

Even though the court finds that the search of the Centre Street residence was supported by probable cause," as noted above, under the good faith exception, suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." U.S. v. Williams, 3 F.3d 69, 74 (3d Cir. 1993). Based on special agent O'Donnell's affidavit, there is no reason to believe that the search was not based on good faith. Therefore, even in the event that there had not been probable cause, the good faith exception would apply. *See Werdene, supra*.

Finally, the defendants seek an evidentiary hearing on their motions to suppress. The court has conducted an evidentiary hearing regarding Torner's motion to suppress evidence found at the Buck Mt. Trailer. "Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure permits defendants to file 'motions to suppress evidence' before trial, but evidentiary hearings on such motions are not granted as a matter of course." U.S. v. Hines, 628 F.3d 101, 105 (3d Cir. 2010) (citing Rule 12(c). "To require a hearing, a suppression motion must raise 'issues of fact material to the resolution of the defendant's constitutional claim.'" Id. (quoting U.S. v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996)). "A motion to suppress requires an evidentiary hearing only if the

motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." Id. (citations omitted). The court in Hines, 628 F.3d at 105, stated that "the purpose of an evidentiary hearing in the context of a suppression motion is to assist the court in ruling upon a defendant's specific allegations of unconstitutional conduct—its purpose is not to assist the moving party in making discoveries that, once learned, might justify the motion after the fact."

The court finds that an evidentiary hearing is not required in the present case regarding the searches of the Cottage Hotel and the Centre Street residence since Torner's and Robles' suppression motions do not "set forth and identify for the court specific and concrete 'issues of fact material to the resolution of [their] constitutional claim[s].'" Id. (quoting Voigt, 89 F.3d at 1067). As discussed, Torner and Robles have not offered sufficient support for their contentions challenging the constitutionality of the search of both the Cottage Hotel and the Centre Street residence. As such, the court, in its discretion, finds that there is no need for an evidentiary hearing regarding defendants' suppression motions and the stated locations.

## III.    CONCLUSION

Based on the foregoing, the court finds that the search warrants for the

Cottage Hotel and the Centre Street residence were supported by probable cause, and that they provided appropriate limitations in guiding the officers in the execution of the warrant. Thus, there was sufficient probable cause to execute the search warrants. The court also concludes that the good faith exception precludes suppression at both locations. As such, Torner's motion to suppress, (Doc. 112), and Robles' motion to suppress, (Doc. 120), will be **DENIED**. The request for an evidentiary hearing regarding the stated locations will also be **DENIED**. An appropriate order will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 9, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2017 CRIMINAL MEMORANDA\17-343-04.wpd